IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1955-N |
| | § | |
| ORESTE TONARELLI, | § | |
| | § | |
| Defendant. | § | |

### **ORDER**

This Order addresses Defendant Oreste Tonarelli's motion to dismiss or, in the alternative, to compel arbitration [doc. 25]. Because the Receiver has standing and has adequately asserted his fraudulent transfer claims on behalf of Stanford receivership entities, the Court denies Tonarelli's motion to dismiss. Additionally, the Court denies Tonarelli's motion, in the alternative, to compel arbitration based on the reasoning provided in the Court's recent order addressing the arbitration agreements in *Janvey v. Alguire*, No. 3:09-CV-0724.

### I. ORIGINS OF THE RECEIVER'S ASSET RECOVERY ACTION

This case arises out of the SEC's imposition of a receivership for R. Allen Stanford's massive Ponzi scheme. The Securities and Exchange Commission filed suit in this Court, requesting the Court appoint a receiver over Stanford individually and several related entities (the "Stanford Entities"). As part of that litigation, this Court assumed exclusive jurisdiction and took possession of the "Receivership Assets" and "Receivership Records" (collectively,

the "Receivership Estate"). *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *SEC v. Stanford Int'l Bank*, No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3.

Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate," *id.* at 5.

Pursuant to those powers, the Receiver filed suit against Oreste Tonarelli, a former managing director, as well as training director, for Stanford Group Company's ("SGC") Private Clients Group in Miami. In the first amended complaint in this case [13-1], the Receiver and the Official Stanford Investors Committee ("OSIC") claim Tonarelli received fraudulent transfers in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA")

or, in the alternative, was unjustly enriched at the expense of the creditors of the Receivership Estate.

## II. THE RECEIVER HAS STANDING TO BRING THIS SUIT

Tonarelli argues that the Court should dismiss the Receiver and OSIC's fraudulent transfer claims under Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction. The Court disagrees. Tonarelli's arguments are unpersuasive and in direct conflict with the rationale espoused by recent Fifth Circuit precedent.

Tonarelli first argues that "the Complaint does not allege, and cannot support the essential element of *Scholes v. Lehmann* – that the Receiver is asserting the claims of one or more of the entities in receivership." Def.'s Mot. to Dismiss 3–4 (citing *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995)). This argument fails, especially in light of the Fifth Circuit's decision in *Janvey v. Democratic Senatorial Campaign Comm., Inc.* (*DSCC II*), 712 F.3d 185 (5th Cir. 2013). In *DSCC II*, the Fifth Circuit determined that a complaint substantially similar to the complaint at issue in the present gave "notice of, and states a claim by the Receiver on behalf of the Stanford corporations and does not raise a claim on behalf of the [investor] creditors." *Id.* at 192. The Court finds this determination by the Fifth Circuit equally applicable in the present case. Like the complaint in *DSCC II*, the complaint in the present case alleges that millions of dollars of ill-gotten gains were transferred from Stanford Entities to Tonarelli. *See* First Am. Compl. ¶¶ 2–4, 29–30; *accord DSCC II*, 712 F.3d at 192. Furthermore, the complaint in this case alleges that the payments from Stanford Entities to Tonarelli constitute fraudulent transfers under applicable law; that the transferred funds are

property of the Receivership Estate held pursuant to a constructive trust for the benefit of the estate; and that Tonarelli is liable to the receivership estate for an amount equaling the amount of funds transferred by Stanford Entities to Tonarelli.  *See* First Am. Compl. ¶¶ 8, 32–33, 35–37, 42–47; *accord DSCC II*, 712 F.3d at 192.  Thus, the Court concludes that the Receiver has standing to allege the fraudulent transfer claim and the alternative unjust enrichment claim on behalf of the Stanford Entities.

Tonarelli next argues that *Scholes* requires a showing or claim that one or more of the Stanford Entities is an alter ego of Allen Stanford.  *See* Def.'s Mot. to Dismiss 4.  Tonarelli does not provide any caselaw in support of this assertion.  Furthermore – as previously addressed, albeit in a slightly different context – the Fifth Circuit has already applied *Scholes* in a related case involving a complaint substantially similar to the complaint in the present case, and the Fifth Circuit made no mention of an alter ego pleading requirement in order for *Scholes* to apply.  *See generally DSCC II*, 712 F.3d 185.  The Court declines to tack on such a requirement to *Scholes*.

Tonarelli also attempts to argue that "the Complaint does not allege that any entity in a receivership is a 'creditor' of any other entity in receivership," and, thus, "the Complaint does not support the Receiver's standing to bring a claim under TUFTA."  Consistent with the reasoning of previous orders by this Court, the Court rejects this argument.  *See, e.g.*, Order, July 8, 2014 [85], *Janvey v. Buck's Bits Service, Inc.*, No. 3:10-CV-0528 (N.D. Tex. filed March 15, 2010) ("Employing the logic of *Scholes* and *DSCC II*, receivership entities *are the creditors* in this sort of situation, and thus it is into their shoes in which the Receiver

steps when bringing TUFTA claims. This approach is perfectly consistent with the statutory language of TUFTA." (citing TEX. BUS. & COM. CODE § 24.002(3)–(4))); *see also Wiand v. Lee*, 2014 WL 2446084, at 6–7 (11th Cir. 2014) (holding that the receiver's fraudulent transfer claims – asserted against investors on behalf of receivership entities – fit within the statutory language of the Florida Uniform Fraudulent Transfer Act ("FUFTA")).

Finally, the Court does not find it necessary to address the multiple 12(b)(1) standing arguments specifically directed against OSIC, "[b]ecause the presence of at least one petitioner with standing is sufficient to satisfy Article III's case-or-controversy requirement, the presence of that party, and its standing, makes it unnecessary to consider whether others do as well." *DSCC II*, 712 F.3d at 193.

### III. THE COURT DECLINES TO COMPEL ARBITRATION

For the reasons stated in the Court's recent order on the arbitration agreements in a related Stanford case, the Court determines that, under the circumstances of this particular receivership and the facts of the present case, (1) the Receiver, by way of his ability to "assume or reject" executory contracts, has rejected any such arbitration agreement between Tonarelli and SGC, and (2) compelled arbitration of the Receiver's claims against Tonarelli would frustrate a central purpose of federal equity receiverships. *See* Order, July 30, 2014 [1093], *Janvey v. Alguire*, No. 3:09-CV-0724 (N.D. Tex. filed April 20, 2009). Thus, the Court denies Tonarelli's motion, in the alternative, to compel arbitration.

## CONCLUSION

For the foregoing reasons, the Court denies Tonarelli's motion to dismiss or, in the alternative, to compel arbitration.

Signed August 1, 2014.

_____
David C. Godbey
United States District Judge